22 A.3d 921

## MARYLAND STATE BOARD OF DENTAL EXAMINERS

v.

Deborah K. TABB.

No. 2463, Sept. Term, 2008.

Court of Special Appeals of Maryland.

June 30, 2011.

Kathleen A. Ellis & Richard N. Bloom (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellant.

Randell H. Norton (Ramona R. Cotca, Thompson O'Donnell, LLP, on the brief), Washington, D.C., for appellee.

Panel: *DAVIS, ARRIE W., WOODWARD and JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

WOODWARD, J.

On August 3, 2005, appellant, Maryland State Board of Dental Examiners ("the Board") charged appellee, Deborah K. Tabb, DDS, with violating Maryland Code (1981, 2005 Repl. Vol.), § 4–315(a)(3), (6), (16), (18), and (22) of the Health Occupations Article ("H.O."), COMAR 10.44.23.02, and § 5B of the American Dental Association's Principles of Ethics and Code of Professional Conduct ("ADA Code of Conduct") regarding the treatment of 29 patients. Prior to the hearing, the administrative law judge ("ALJ") granted the motion of the Board's administrative prosecutor ("the prosecutor") to exclude appellee's expert witness summaries and testimony,

---

* Arrie W. Davis, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

because the summaries did not comply with the applicable discovery regulation, COMAR 10.44.07.08(B).

After a 10–day hearing drawn out over the course of several months, the ALJ concluded on September 24, 2007, that appellee violated H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B, but did not violate H.O. § 4–315(a)(3), (22), and COMAR 10.44.23.02. In an opinion issued on March 2, 2008, the Board, however, upheld all of the charges brought against appellee and ordered, among other things, that appellee be reprimanded and placed on eighteen months' probation. On November 26, 2008, the Circuit Court for Montgomery County (Debelius, J.) reversed the Board's final opinion and order and remanded the case to the Office of Administrative Hearings ("OAH") for a new hearing on the charges relating to the alleged violations of H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B. This timely appeal followed. The Board presents two questions for our review, which we have rephrased:

I. Did the Board err or abuse its discretion in adopting the ALJ's ruling that excluded appellee's expert witness summaries and testimony, and if so, did such error require vacating the Board's finding of violations of H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B?

II. Was there substantial evidence to support the Board's finding of violations of H.O. § 4–315(a)(3) and (22) and COMAR 10.44.23.02?

For the reasons stated herein, we shall affirm the judgment of the circuit court.

## BACKGROUND

Upon receiving allegations of incompetent dental treatment, unnecessary dental procedures, and failure to secure informed consent, the Board initiated an investigation of appellee's treatment of 29 patients in her Bethesda, Maryland office. On August 3, 2005, the Board charged appellant with violating the

following provisions of the Maryland Dentistry Act, H.O. § 4-315(a):

(3) Obtains a fee by fraud or attempts to obtain a fee by fraud;

\* \* \*

(6) Practices dentistry in a professionally incompetent manner or in a grossly incompetent manner;

\* \* \*

(16) Behaves dishonorably or unprofessionally, or violates a professional code of ethics pertaining to the dentistry profession;

\* \* \*

(18) Violates any rule or regulation adopted by the Board;

\* \* \*

(22) Knowingly submits to a third party any claim form, bill, or statement which contains any misleading, deceptive, false, incomplete, or fraudulent representation asserting a fee which is greater than the fee that the dentist usually accepts as payment in full for any given dental appliance, procedure, or service[.]

The Board also alleged that appellee violated ADA Code of Conduct § 5B, which provides: "Dentists shall not represent the fees being charged for providing care in a false or misleading manner." Finally, the Board claimed that appellee violated COMAR 10.44.23.02, which states, in relevant part: "Unprofessional conduct includes the removal of sound or serviceable mercury amalgam restorations by a dentist without obtaining appropriate informed consent from the patient. . . ."

On August 9, 2005, the OAH sent a Notice of In–Person Prehearing Conference to inform the parties that a prehearing conference was scheduled for November 22, 2005. According to the instructions accompanying the notice, the parties were required, fifteen days before the pre-hearing conference, to file with the OAH and serve on each other a pre-hearing conference statement that included, among other

things, "[the] name and *curriculum vitae* of any expert witness" testifying and "[a] summery [sic] of the expert witness's testimony, including the opinion offered and the factual basis(es) and the reason(s) underlying the opinion[.]" The prosecutor mailed her pre-hearing conference statement to appellee on November 4, 2005, and filed it with the OAH on November 8, 2005.

Appellee provided her pre-hearing conference statement to the prosecutor on November 7, 2005, and filed it with the OAH that same day. Included in appellee's statement were the names of two expert witnesses, Dr. Michael Pollowitz and Dr. Charles D. Kirksey, whom appellee intended to call at the hearing, and the following summary of their expected testimony:

1. Dr. Michael Pollowitz is an expert in the field of general dentistry. He will testify regarding his review of the charts, radiographs, his on-site visit with [appellee] and observation of her patient care. It is anticipated that Dr. Pollowitz will testify regarding his training and experience in the field of general dentistry, his review of the allegations in the Board Complaint, and [the Board's expert witness's] comments thereon as well as his review of all applicable charts and radiographs. It is anticipated that Dr. Pollowitz will testify that [appellee]'s dental practices do *not* obtain fees by fraud, nor did her practices constitute an attempt to obtain a fee by fraud. He will testify that he observed no signs of professional incompetence when he visited [appellee]'s office; viewing both her patient management and clinical skills. He will testify that her informed consent practices comply with the applicable standard of care and that he does not see any history of [appellee] recommending amalgam restorations for removal for mercury content or other systemic health related reasons. Dr. Pollowitz will testify that treatment planning or opinions regarding need for treatment cannot be based on radiographs alone if such an opinion fails to factor in the clinical exam findings. Dr. Pollowitz will testify that the treatment performed on patients A through CC was necessary and appropriate. Dr.

Pollowitz will testify that there is no basis for the Board's complaint of overaggressive restoration of teeth and that his clinical observation of [appellee] supports his contention that her restorative work is excellent and meets or exceeds the standard of care. He will testify that her treatment planning is appropriate and that patients are provided with all options, associated risks and benefits, and that the patients themselves choose how aggressive to be in pursuing their dental health and esthetic needs, and give informed consent for all treatment. He will testify that her use or recommendation of irrigation after root planing and curettage was appropriate and that he sees no deliberate or intentional upcoding. He will testify regarding the staff practices with respect to coding and billing in light of [appellee]'s fee schedule costs. Dr. Pollowitz will testify that he sees no evidence of improperly polymerized composites and that failure on a given case does not constitute an inherent problem requiring any remedial action and can and does occur within the standard of care. Dr. Pollowitz will testify that the use of sealants in adults is appropriate for preventative treatment and that any adult presented with that option may choose to pursue such prophylactic care.

2. Dr. Charles D. Kirksey is an expert in the field of general dentistry. Dr. Kirksey will testify regarding his review of the patient chart and radiographs, his training and expertise in the field of dentistry, and his finding as to each allegation made by the Board and [the Board's expert] as outlined hereinabove. He will testify that [appellee] complied with the applicable standard of care in her treatment of the patients, did not attempt to or obtain a fee by fraud, practiced in a professionally competent manner, appropriately treatment planned patients, did not improperly remove amalgam restorations for mercury content or other systemic health reasons, was not overaggressive in her treatment and/or treatment planning, made appropriate recommendations to patients regarding treatment planning, used irrigation appropriately, did not intentionally upcode, did not improperly polymerize composites, appropriately

used polymerized composites, and appropriately recommended sealants for adults, and obtained patient consent for all procedures.

On November 18, 2005, the prosecutor faxed and mailed to appellee's counsel a Motion to Exclude Respondent's Expert Reports and Testimony, asserting that appellee's summary of her experts' anticipated testimony in the pre-hearing conference statement did not comply with the discovery regulations. Specifically, the prosecutor argued that appellee's expert witness summary did not adhere to COMAR 10.44.07.08(B)(1), which requires the parties to provide "[a] detailed written report summarizing the expert's testimony, which includes the opinion offered and the factual basis and reasons underlying the opinion," because "counsel representations regarding the experts' testimony is *not* an expert report." (Emphasis in original). The prosecutor also claimed that the summary was inadequate, because it "fail[ed] to state the opinion offered regarding any of the 29 patients whose care [wa]s at issue, much less the factual basis and reasons underlying those opinions, as is required by [COMAR] 10.44.07.08(B)(1)."

In her opposition, which was faxed to the prosecutor and the ALJ on November 21, 2005, appellee claimed that, although her expert witness summary adequately presented the expected testimony of her experts, appellee was unable to provide a more detailed submission because the prosecutor had "exclusive possession and control" of original dental x-rays and would only allow appellee's experts to review them on the Board's premises. Appellee maintained that the copies of the x-rays provided by the prosecutor were "insufficient for purposes of the experts forming their final opinions." Additionally, appellee stated that, because she did not receive the Notice of In–Person Prehearing Conference until November 7, 2005, which was the deadline for submitting pre-hearing conferences statements, the prosecutor consented "to a late submission of exhibits," which included appellee's expert witness reports. Appellee then argued that, because the hearing was not scheduled until March of 2006 and COMAR 10.44.07.08(B) allowed mandatory discovery to be exchanged up to 45 days

before the scheduled hearing date, the ALJ should compel the prosecutor to turn over the original x-rays for review by appellee's experts and provide appellee an opportunity to submit supplemental expert witness reports by January 16, 2006. Appellee also provided with her opposition a copy of Dr. Pollowitz's September 13, 2005 report.

At the pre-hearing conference on November 22, 2005, the ALJ reserved ruling on the prosecutor's motion, allowed appellee to file a supplemental opposition, and provided an opportunity for the prosecutor to reply. Appellee filed her supplemental opposition on December 5, 2005, and repeated her request that she have a chance to present a supplemental expert report and that the ALJ require the prosecutor to turn over the original x-rays. Appellee repeated that the prosecutor previously "indicated that she would not object to later submission of exhibits." Appellee claimed that the prosecutor would not be prejudiced by such relief because the hearing was not scheduled until March of 2006. Included in appellee's supplemental opposition were e-mails from Dr. Kirksey in which he stated that he could not opine on the Board's charges without clearer reproductions of patient x-rays and photographs. Dr. Kirksey also noted that traveling to the Board's offices to review the original records would cause him to close down his office, which would result in disproportionate inconvenience for himself and considerable expense for appellee. Appellee attached Dr. Kirksey's *curriculum vitae* to the supplemental opposition.

The prosecutor faxed and mailed its reply to appellee on December 15, 2005. According to the prosecutor, appellee's request for the Board to produce the original x-rays and allow supplemental expert reports to be filed 14 days thereafter "exceed[ed]" both the [OAH's] and the [Board's] regulations regarding discovery" and was "contrary to established Board policy . . . to ensure the integrity of evidence to be provided at an administrative hearing." The prosecutor, however, did not contest appellee's representation of an agreement consenting to the late filing of exhibits. The prosecutor also did not oppose a modification of the deadline, but rather took issue

with the length of appellee's requested extension, because the prosecutor would then have had only three weeks prior to the administrative hearing to review any additional submissions.

In a written opinion, dated January 2006,[1] the ALJ granted the prosecutor's motion, struck appellee's expert witness summaries, and ordered that appellee's experts could not testify at the hearing. The ALJ also rejected appellee's request for the original x-rays and refused to allow appellee to file supplemental expert witness reports. The ALJ first determined the insufficiency of appellee's expert witness summaries under COMAR 10.44.07.08(B):

19. WHEREAS, [appellee] argued that her pre-hearing statement "clearly states" her experts' areas of potential testimony; and,

20. WHEREAS, however, COMAR 10.44.07.08(B) requires "a detailed written report summarizing the expert's testimony, which includes the opinion offered and the factual basis and opinion underlying the opinion;" and,

21. WHEREAS, the summary of [appellee]'s experts' testimony found in her pre-hearing statement is insufficient to satisfy the requirement on COMAR 10.44.07.08(B)(1)(b) and, therefore, [appellee] has failed to comply with the requirements of COMAR 10.44.07.08(B)[.]

Regarding appellee's demand for the original x-rays, the ALJ ruled that under the applicable regulations, the Board only had to provide copies of records and not produce the originals to an opposing party. The ALJ concluded that the language of COMAR 10.44.07.08(B) demanded that it grant the prosecutor's motion and deny appellee's request:

32. WHEREAS, ... [appellee]'s argument that her failure to comply with the mandatory requirements of CO-MAR 10.44.07.08(B) should be excused because [appellee]'s counsel did not receive the notice of the pre-hearing conference before the date on which the man-

---

1. The opinion fails to specify the day in January of 2006.

datory report was due and because the Board waived the time requirement set forth in COMAR 10.44.07.08(B) is not supported by fact or law; and

33. WHEREAS, [appellee] also argued that, because the hearing is scheduled for March 7–9, 200[6], the Motion should be denied and an order drafted that compels that she provide sufficient experts' reports to the Board at least 45 days before the hearing "as contemplated by the Code . . .;" and,

34. WHEREAS, however, COMAR 10.44.07.08 is unambiguous, clearly stating that the remedy for non-compliance "shall be" the exclusion of the party's expert's report and testimony; and,

\* \* \*

37. WHEREAS, when nothing in the context of a statute or regulation that uses the word "shall" indicates directory meaning, as is the case here, the word "shall" must be given a mandatory meaning; and,

\* \* \*

39. WHEREAS, the Board and, therefore, the [OAH], is bound by the mandatory language of COMAR 10.44.07.08(B)[.]

(Citations omitted).

On January 12, 2006, appellee filed a motion for reconsideration, to which the State responded on January 19, 2006. After appellee filed a reply to the opposition on January 27, 2006, the ALJ denied the motion for reconsideration on February 14, 2006.

The hearing was held on August 22, 23, and 24, 2006; November 2, 3, 6, and 7, 2006; and June 4, 5, and 25, 2007. The ALJ issued a 225 page proposed decision on September 24, 2007. After making extensive findings of fact, the ALJ provided his legal recommendations. The ALJ first determined that appellee violated H.O. § 4–315(a)(6):

Md.Code Ann., Health Occ. § 4–315(a)(6) authorizes the Board to discipline a dentist who "[p]ractices dentistry in a

professionally incompetent manner or in a grossly incompetent manner."

\* \* \*

I have found that [appellee] failed on a number of occasions to document the necessity for certain treatment and in fewer instances that her treatment was deficient.... [N]one of the findings constitutes unmitigated or glaringly obvious inadequacy and, therefore, I decline to conclude that [appellee] practiced dentistry in a grossly incompetent manner.

\* \* \*

... I conclude that [appellee] violated Md.Code Ann., Health Occ. § 4–315(a)(6) by her practice of incompetent dentistry.

(First alteration in original) (footnote omitted).

The ALJ then concluded that appellee violated ADA Code of Conduct § 5B:

Section 5B of the American Dental Association's Code of Professional Conduct states: "Dentists shall not represent the fees being charged for providing care in a false or misleading manner."...

\* \* \*

It is beyond cavil that [appellee] violated Section 5B, when she reported to the insurance carriers of patients BB, H, O, R, V, X, and Y that she treated them with porcelain crowns fused to high noble metal.

\* \* \*

Section 5.B prohibits dentists from representing their fees for a service in a false or misleading manner. [Appellee] represented her fee for what she claimed was an occlusal adjustment—limited. The procedure she actually performed very well may have been within the scope of an occlusal adjustment—limited under the Code. Based on my finding that the procedure was cosmetic smoothing, however, it is clear her representations to the insurance carriers that she performed an occlusal adjustment—limited on Patient F's, Patient U's, and Patient Y's teeth were either false or misleading. I conclude, therefore, that [appellee] also violated Code of Professional Conduct § 5.B when she

performed cosmetic smoothing and represented to insurance carriers that she had performed an occlusal adjustment—limited.

The ALJ also determined that appellee violated H.O. § 4–315(a)(16) and (18):

Md.Code Ann., Health Occ. § 4–315(a)(16) states that a dentist may be disciplined if she "[b]ehaves dishonorably or unprofessionally, or violates a professional code of ethics pertaining to the dentistry profession." Solely by virtue of the findings and conclusions discussed above, and based on my finding that [appellee] treated minor Patient I without obtaining consent from the patient's parent or legal guardian, I also conclude that [appellee] violated Md.Code Ann., Health Occ. § 4–315(a)(16).

Md.Code Ann., Health Occ. § 4–315(a)(18) states that a dentist may be disciplined if she "[v]iolates any rule or regulation adopted by the Board." Solely by virtue of the findings and conclusions discussed above, I also conclude that [appellee] violated this subsection of Md.Code Ann., Health Occ. § 4–315(a)(18).

(Some alterations in original).

The ALJ, however, refused to find appellee in violation of all of the charges brought by the prosecutor. According to the ALJ, appellee did not violate H.O. § 4–315(a)(3):

Md.Code Ann., Health Occ. § 4–315(a)(3) (2005) authorizes the Board to discipline a dentist who "[o]btains a fee by fraud or attempts to obtain a fee by fraud."

\* \* \*

There is no direct evidence of purpose or intent. The Board is correct, however, that purpose or intent may be inferred from the circumstances of an actor's conduct....

There is nothing about the circumstances here from which one reasonably can infer a purpose or intent to defraud insurance carriers or patients....

\* \* \*

The circumstances here simply do not reasonably point to fraud. Accordingly, I conclude that [appellee] did not violate Md.Code Ann., Health Occ. § 4–315(a)(3).

(First alteration in original). The ALJ also concluded that appellee did not violate H.O. § 4–315(a)(22):

Md.Code Ann., Health Occ. § 4–315(a)(22) states that a dentist may be disciplined if she "[k]nowingly submits to a third party any claim form, bill, or statement which contains any misleading, false, incomplete or fraudulent representation asserting a fee which is greater than the fee that the dentist usually accepts as payment in full for any given dental appliance, procedure, or service."

As discussed above, [appellee] submitted a false claim to several patients' insurance carriers for the use of high noble crowns when she had actually used non-precious crowns. Based on Resp. Exh. # 34J and [appellee]'s unrefuted testimony, however, the fee she charges for high noble and non-precious crowns is the same. A necessary element of a violation of § 4–215(a)(22) is the submission of a false claim asserting a fee which is **greater than** the fee the dentist usually accepts as payment in full. The Board has not proven that necessary element of the statute.

Also, as discussed above, I have found that [appellee] submitted claims on three occasions to patients' insurance carriers that she performed occlusal adjustment—limited when she had performed cosmetic smoothing. As discussed above, the Board has the burden to prove the elements of this statutory action. The Board has not proved what [appellee] charges for cosmetic smoothing. Further, although Dr. Magaziner testified that cosmetic smoothing and occlusal adjustment—limited are different procedures, I am not satisfied that whatever specific procedure [appellee] performed was not within the scope of how the Code defines occlusal adjustment—limited.

Based on these reasons, I decline to conclude that [appellee] violated Md.Code Ann., Health Occ. § 4–315(a)(22) based on her claims to insurance carriers for the use of high noble crowns and occlusal adjustments—limited.

(First alteration in original).

Lastly, the ALJ determined that appellee did not violate COMAR 10.44.23.02:

COMAR 10.44.23.02 provides:

### .02 Amalgam Restoration.

Unprofessional conduct includes the removal of sound and serviceable mercury amalgam restorations by a dentist without obtaining appropriate informed consent from the patient, which includes but is not limited to advising the patient that:

A. The National Institutes of Health has determined that there are no verifiable systemic health benefits resulting from the removal of mercury amalgam restorations; and

B. The removal of sound and serviceable mercury amalgam restorations may significantly affect the integrity of the tooth.

I have found that [appellee] failed to obtain written informed consent and failed to document that she obtained verbal informed consent for the replacement of amalgam restorations with composite restorations for her treatment of patients A, B, AA, E, H, J, K, M, N, O, V, W, X, Y, and Z. By its on [sic] terms, COMAR 10.44.23.02 requires "appropriate informed consent from a patient" only when mercury amalgam restorations are sound and serviceable. Based on the record before me, I have declined to find that the amalgam restorations that [appellee] replaced were sound and serviceable. I conclude, therefore, that [appellee] *did not violate* COMAR 10.44.23.02

Based on these recommendations, the ALJ believed appellee should be sanctioned with a formal reprimand, placed on eighteen months of probation, required to take courses in dental billing and coding, restorative care, and documentation of dental treatment, and complete a Board practice review.

Both parties filed and responded to exceptions to the ALJ's proposed decision. The Board held a hearing on the exceptions on December 5, 2007, and issued its opinion and final

order on March 2, 2008. After adopting the findings of fact set forth in the ALJ's proposed decision, the Board upheld the ALJ's recommendations regarding appellee's violations of H.O. § 4–315(a)(6), (16), and (18):

> [Appellee] excepts to the ALJ's findings that she violated H.O. § 4–315(a)(6) ...; (16) ... and (18).... [Appellee] argued that the evidence was insufficient to support such findings. The [prosecutor] on the other hand, argues, in the face of evidence to the contrary, that the ALJ erred in finding that [appellee] violated the aforementioned provisions in only a few specific instances.
>
> The [prosecutor] correctly argues that where, as here, the ALJ gives little weight to the testimony of the [prosecutor]'s expert witness for non-demeanor based reasons, [ ] the Board is free to apply its experience, technical competence, and specialized knowledge and to draw its own conclusions from the record. In so doing, the Board sustains the [prosecutor]'s Exception and overrules [appellee]'s Exception.
>
> The Board applies this principle and exercises its statutory prerogative in its evaluation of the record in finding, among other things and in addition to the ALJ's findings, that [appellee] treated patients without documentation, performed treatment without documented dental necessity, and incompetently performed restorations. [Appellee] violated the standard of care when she treated twenty-six patients and failed to properly document the use of anesthetic agents on a single one. The Board views replacement of sound and serviceable amalgams in thirteen patients without written informed consent to be nothing less than unprofessional conduct, a violation of COMAR 10.44.23.02. Although the ALJ found that [appellee] filed false claims, he found, contrary to the Board's determination, no unprofessional conduct.
>
> The ALJ's out of hand rejection of the testimony of the Board's expert and his reliance on [appellee]'s self serving testimony does not bode well for protecting the public from substandard care. A glaring example is [appellee]'s failure to properly document the use of anesthetic agents.

The Board also agreed with the ALJ that appellee violated ADA Code of Conduct § 5B.

The Board, however, overruled the ALJ's conclusion that appellee did not violate H.O. § 4–315(a)(3) and (22). The Board presented the following analysis in support of its decision:

> The [prosecutor] excepts to the ALJ's failure to find that [appellee] obtained feeds by fraud, violations of H.O. § 4–315(a)(3) and (22).
>
> The ALJ found that [appellee] represented fees in either a false or misleading manner in violation of § 5B of the ABA [sic] Principles of Ethics and Code of Professional Conduct; yet he rejected the charged violations of H.O. § 4–315(a)(3) and (22), finding that she did not obtain fees by fraud nor file false and misleading claims. The Board finds to the contrary, concurring with the [ ] [p]rosecutor's argument that the ALJ applied the incorrect standard in rejecting the charged violations. Adding further to the Board's consternation with the ALJ's [sic] is his acceptance of [appellee]'s shifting blame for incorrect billing to her employees. The responsibility rests with [appellee]. The Board sustains the [prosecutor]'s Exception. . . .

The Board also determined, contrary to the ALJ recommendation, that appellee violated COMAR 10.44.23.02.

The Board thus sustained all of the charges against appellee and ordered, among other things, that appellee be reprimanded, serve probation for eighteen months, obtain a Board approved practice reviewer to conduct quarterly practice reviews during the probationary period, satisfactorily complete courses in restorative care, documentation of treatment, and dental billing and coding, and provide to the Board copies of the informed consent appellee uses with her patients.

On April 17, 2008, appellee filed a Petition for Judicial Review in the Circuit Court for Montgomery County. The circuit court held a hearing on November 21, 2008. On November 26, 2008, the circuit court issued its opinion and order reversing the Board's final order and remanding for a

new hearing before the ALJ the determination of whether appellee was in violation of H.O. § 4–315(a)(6), (a)(16), (a)(18), and the ADA Code of Conduct § 5B.

The circuit court first held that the ALJ erroneously concluded that appellee's written expert witness reports did not comply with COMAR 10.44.07.08(B)(1)(b). According to the court, appellee provided a sufficient summary of her experts' expected testimony and the basis of their opinions. The court also noted that the ALJ improperly refused to grant appellee additional time to present a supplemental report. The court concluded that the ALJ's exclusion of appellee's expert witness and testimony constituted a prejudicial error of law. As a result, the ALJ's conclusions that appellee violated H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B "were tainted" by the exclusion of appellee's experts' reports and testimony.

The circuit court also determined that the Board erred when it rejected the recommendation of the ALJ that appellee did not violate H.O. § 4–315(a)(3). The court noted that the Board failed to state the facts upon which it relied in making its decision and that the ALJ's factual findings, which the Board expressly adopted, did not support its conclusion. The court found the same defect infusing the Board's decision that appellee violated H.O. § 4–315(a)(22) and COMAR 10.44.23.02.

A timely notice of appeal followed. Additional facts will be included as necessary to our discussion of the questions presented in this appeal.

## DISCUSSION

### I.

**Did the Board err or abuse its discretion in adopting the ALJ's ruling that excluded appellee's expert witness reports and testimony, and if so, did such error require vacating the Board's finding of violations of H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B?**

The Board argues that the trial court erroneously reversed its adoption of the ALJ's ruling that excluded appellee's

expert witness summaries and testimony at the administrative hearing for failing to provide an appropriate expert witness information. According to the Board, the ALJ properly determined that appellee's expert witness information was inadequate under the mandatory discovery regulations, because appellee failed to include a patient by patient refutation of the Board's charges. The Board maintains that the ALJ correctly concluded that such a deficiency demanded the sanction of excluding appellee's expert witness summaries and testimony. The Board also claims that the trial court erred by stating that the ALJ should have given appellee additional time to file a proper expert witness reports. According to the Board, the applicable administrative regulations do not impose such an obligation on the ALJ.

Appellee responds that the trial court properly reversed the Board's decision. First, appellee states that the summaries of appellee's expected expert testimony were sufficient under the governing regulations. According to appellee, a patient by patient response to appellant's charges was overly burdensome under the circumstances and not required by the regulations. Next, appellee argues that the exclusion of its expert witnesses was erroneous. Specifically, appellee maintains that, because the regulations allow a deadline extension for expert witness reports, the ALJ improperly concluded that he was required to exclude appellee's expert witness summaries and testimony. Appellee also claims that the ALJ's failure to modify this deadline was erroneous. Finally, appellee argues that she was prejudiced by the ALJ's erroneous exclusion of her expert witnesses. Appellee notes that the ALJ's ruling severely restricted her ability to refute appellant's charges at the administrative hearing.

## Standard of Review

"In an appeal from a circuit court's judicial review of an administrative agency proceeding, we review the final decision of the agency, not the circuit court." *Md. Dep't of Transp. v. Maddalone,* 187 Md.App. 549, 571, 979 A.2d 229 (2009). "A court's role in reviewing an administrative agency

adjudicatory decision is narrow." *Motor Vehicle Admin. v. Delawter,* 403 Md. 243, 256, 941 A.2d 1067 (2008) (quoting *Md. Aviation Admin. v. Noland,* 386 Md. 556, 571, 873 A.2d 1145 (2005)). We are, however, not restricted in our ability to overturn administrative agency action for legal error. "[A]lthough we frequently give weight to an agency's experience in interpretation of a statute that it administers, ... it is always within our prerogative to determine whether an agency's conclusions of law are correct, and to remedy them if wrong." *AT & T Commc'ns of Md., Inc. v. Comptroller of the Treasury,* 405 Md. 83, 92–93, 950 A.2d 86 (2008) (ellipsis in original) (quotations omitted). This Court has stated that, "[w]hen reviewing the ALJ's legal conclusions, ... the court must determine whether the agency interpreted and applied the correct principles of law governing the case and no deference is given to a decision based solely on an error of law." *Solomon v. State Bd. of Physician Quality Assurance,* 155 Md.App. 687, 696–97, 845 A.2d 47 (2003) (quotations omitted). Additionally, appellate courts will not disturb administrative action that is committed to an agency's discretion "unless, under the facts of a particular case, the ... abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be 'arbitrary or capricious.'" *Md. Transp. Auth. v. King,* 369 Md. 274, 291, 799 A.2d 1246 (2002).

## Analysis

COMAR 10.44.07.08 governs discovery procedures in disciplinary actions brought by the Board. COMAR 10.44.07.08(B), which outlines what discovery the parties are required to provide, states, in relevant part:

.08 **Discovery**

\* \* \*

B. Mandatory Discovery.

(1) Each party shall provide to the other party not later than 15 days before the prehearing conference, if

scheduled, or 45 days before the scheduled hearing date, whichever is earlier:

(a) The name and curriculum vitae of any expert witness that will testify at the hearing; and

. (b) A detailed written report summarizing the expert's testimony, which includes the opinion offered and the factual basis and reasons underlying the opinion.

(2) If the Board or the Office of Administrative Hearings, as appropriate, finds that the report is not sufficiently specific, or otherwise fails to comply with the requirements of this section, the testimony of the expert, and any report of the expert, shall be excluded from the hearing.

COMAR 10.44.07.08(G) provides:

G. Construction.

(1) In hearings conducted by an administrative law judge of the Office of Administrative Hearings, **this regulation shall be construed, whenever possible, as supplementing and in harmony with COMAR 28.02.01.**

(2) In a conflict between this regulation and COMAR 28.02.01, this regulation applies.

(Emphasis added).

COMAR 28.02.01.11,[2] which is referenced in COMAR 10.44.07.08(G)(1), details the responsibility and authority of the ALJ:

**.11 Powers and Duties of Judges.**

\* \* \*

B. A judge has the power to regulate the course of the hearing and the conduct of the parties and authorized representatives, including the power to:

\* \* \*

---

**2.** The parties in their briefs refer to former COMAR 28.02.01.08, as did the ALJ in his opinion. COMAR 28.02.01.08 is now recodified, without significant substantive changes, at COMAR 28.02.01.11. For the purposes of this opinion, we shall reference COMAR 28.02.01.11.

(4) Consider and rule upon motions in accordance with this chapter;

\* \* \*

(7) **Grant a continuance or postponement;**

(8) **Modify or waive, reasonably and for good cause, any time periods established by this chapter;**

(9) Request parties to submit legal memoranda, proposed findings of fact, and proposed conclusions of law;

\* \* \*

(11) Issue orders as are necessary to secure procedural simplicity and administrative fairness and to eliminate unjustifiable expense and delay;

(12) **Conduct the hearing in a manner suited to ascertain the facts and safeguard the rights of the parties to the hearing[.]**

(Emphasis added).

As previously indicated, in her pre-conference statement, appellee listed the names of two expert witnesses and presented a summary of their expected testimony. The prosecutor filed a motion asserting that appellee's witness information did not comport with COMAR 10.44.07.08(B)(1) and that the terms of COMAR 10.44.07.08(B)(2) required the ALJ to exclude the summary and prevent appellee's witnesses from testifying. The prosecutor argued that appellee's pre-conference statement included only appellee's counsel's generalized characterization of the expected testimony and failed to present a patient by patient refutation of the administrative charges. Appellee opposed the motion on the grounds that the expert information in the pre-conference statement complied with the applicable COMAR discovery regulations, but if it did not, the State failed to provide appellee's experts with the original x-rays necessary for them to form their final opinions. Appellee also attached to her opposition a report of Dr. Pollowitz.

At the pre-hearing conference, the ALJ allowed appellee to file a supplement to her opposition within approximately two weeks. In her supplemental opposition, appellee argued that

the State previously agreed to the late submission of expert reports and that it would not be prejudicial for the ALJ to allow more time for appellee's experts to review the original x-rays. Appellee also included, among other things, e-mails from Dr. Kirksey stating that he was not able to assess fully the prosecutor's allegations due to the poor quality of the x-ray photocopies. In reply, the prosecutor stated that Dr. Pollowitz's report was not in compliance with the discovery regulations, that the State was not obligated to furnish appellee with the original x-rays, and that the ALJ did not have the authority to order the turn-over of the original x-rays. The prosecutor noted that the original x-rays were available for inspection at the Board's premises. Furthermore, the prosecutor argued that honoring appellee's request for an extension to file supplemental expert reports would be prejudicial, because the prosecutor would only have three weeks prior to the administrative hearing to review them.

█ In granting the prosecutor's motion, the ALJ ruled that "the summary of [appellee]'s experts' testimony *found in her pre-hearing statement* is insufficient to satisfy the requirement on COMAR 10.44.07.08(B)(1)(b) and, therefore, [appellee] has failed to comply with the requirements of COMAR 10.44.07.08(B)[.]" (Emphasis added). The ALJ then rejected appellee's request to extend the deadline to allow the submission of supplemental expert witness reports, ruling that "COMAR 10.44.07.08 is unambiguous, clearly stating that the remedy for non-compliance 'shall be' the exclusion of the party's expert's report and testimony."

A close reading of the ALJ's ruling supports the conclusion that in reaching his decision, the ALJ limited his consideration to the expert witness summaries in appellee's pre-hearing conference statement, and did not consider the materials included in appellee's subsequent submissions. In his written opinion, the ALJ recognized that appellee filed an opposition to the prosecutor's motion to exclude and a supplement to that opposition, the latter being expressly authorized by the ALJ himself at the pre-hearing conference. Included in the opposi-

tion or supplement were a report of Dr. Pollowitz, Dr. Kirksey's curriculum vitae, and e-mails from Dr. Kirksey expressing the opinion that the poor quality of the x-ray photocopies provided by the prosecutor precluded him from fully analyzing the merit of the Board's charges. Yet, the statement in the ALJ's opinion that "the summary of [appellee]'s experts' testimony found in her pre-hearing statement" reveals that the ALJ confined himself to the expert witness information contained in appellee's pre-hearing conference statement and ignored the documents appellee filed in her opposition and supplement to the opposition.

Under the circumstances of the instant case, it was an error of law for the ALJ to base his ruling solely on the expert witness information that was contained in appellee's pre-hearing conference statement filed fifteen days before the pre-hearing conference. As previously mentioned, COMAR 10.44.07.08(G)(1) provides that "this regulation shall be construed, whenever possible, as supplementing and *in harmony with* COMAR 28.02.01." (Emphasis added). Thus, by its express language, COMAR 10.44.07.08(B) must be read "in harmony with" COMAR 28.02.01. By considering Dr. Pollowitz's expert witness report, which was attached to appellee's opposition to the motion to exclude, and by allowing appellee the opportunity to file a supplement to the opposition, which included Dr. Kirksey's e-mails and Dr. Kirksey's curriculum vitae, the ALJ acted pursuant to his ability to "[c]onduct the hearing in a manner suited to ascertain the facts and safeguard the rights of the parties to the hearing," COMAR 28.02.01.11(B)(12), by "request[ing] parties to submit legal memoranda[.]" COMAR 28.02.01.11(B)(9). To then fail to consider these materials in his final ruling ignores the very regulations under which the ALJ was acting. For an ALJ to conclude that he was restricted to appellee's submission filed fifteen days before the pre-hearing conference in reaching that determination was a misinterpretation of the applicable COMAR regulations and therefore an error of law.

■ Additionally, the ALJ's determination that he did not have discretion to grant appellee's request to modify the deadline in order to allow for the filing of supplemental expert reports was an error of law. In his ruling, the ALJ stated that, because "the Board and, therefore, the Office of Administrative Hearings, is bound by the mandatory language of COMAR 10.44.07.08(B)," he was powerless to modify the deadline for filing expert witness reports. The Board argues that COMAR 28.02.01.11(B)(8), which allows an ALJ to "[m]odify or waive, reasonably and for good cause, any time periods established *by this chapter*" does not reach the discovery regulations of COMAR 10.44.07.08. (Emphasis added). We disagree and shall explain.

Because COMAR 10.44.07.08(G)(1) expressly provides that COMAR 10.44.07.08 supplements COMAR 28.02.01, "this chapter" under COMAR 28.02.01.11(B)(8) includes the deadlines for filing expert witness reports established by COMAR 10.44.07.08(B)(1). In other words, if the ALJ believed appellee presented sufficient grounds for allowing more time for appellee's experts to review the original x-rays and secure clearer reproductions, he had the power to "[m]odify or waive ... any time periods established by this chapter" under COMAR 28.02.01.11(B)(8) or "[g]rant a continuance or postponement" under COMAR 28.02.01.11(B)(7). The relevant provisions of COMAR 28.02.01 can be read "in harmony" with the mandatory discovery provisions of COMAR 10.44.07.08(B), because the exercise of such flexibility does not bear upon the adequacy of the contents of the expert witness reports themselves.[3] Therefore, the ALJ's failure to recognize the discre-

---

3. The fact that an ALJ has the flexibility to direct the parties to provide supplemental materials or to modify a deadline for submission of supplemental expert reports does not change the criteria by which expert witness reports are assessed under COMAR 10.44.07.08(B)(1)(a) and (b). An ALJ's allowance of supplemental filings or modification of a deadline to permit additional expert reports does not undermine the requirement that parties supply "[t]he name and curriculum vitae of any expert witness that will testify at the hearing," COMAR 10.44.07.08(B)(1)(a), and "[a] detailed written report summarizing the expert's testimony, which includes the opinion offered and the factual

tion accorded by COMAR 28.02.01.11(B)(7) and (B)(8) was an error of law.

 The ALJ's ruling that excluded appellee's expert reports and prevented appellee's experts from testifying at trial also was arbitrary or capricious. First, nowhere in the ALJ's written opinion is it revealed *why* appellee's expert witness summaries did not satisfy the requirements of CO-MAR 10.44.07.07(B)(1)(a) and (b). "[F]or a reviewing court to perform properly its examination function, an administrative decision must contain factual findings on all the material issues of a case and a clear, explicit statement of the agency's rationale." *Fowler v. Motor Vehicle Admin.*, 394 Md. 331, 342, 906 A.2d 347 (2006). Thus, "in judicial review of agency action the court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency." *United Steelworkers of Am. v. Bethlehem Steel Corp.*, 298 Md. 665, 679, 472 A.2d 62 (1984). Because the ALJ failed to articulate an explanation for its decision, there is no analysis for this Court to review.

Next, the ALJ stated in his ruling that appellee failed to supply a statement from her experts that they were unable to comply with COMAR 10.44.07.08(B). In her supplemental opposition, however, appellee included an e-mail from Dr. Kirksey dated November 22, 2005, in which he stated that without an opportunity to duplicate the original x-rays, his "ability to testify accurately and effectively will be handicapped and greatly impeded." Additionally, the ALJ never addressed the agreement reached by counsel allowing appellee to file supplements to her expert witness reports after the deadline. In appellee's supplement to the opposition to the prosecutor's motion to exclude her expert reports and testimony, she stated that the prosecutor "indicated that she would not object to later submission of exhibits, since she herself was request-

---

basis and reasons underlying the opinion." COMAR 10.44.07.08(B)(1)(b). An expert witness report, including any supplements thereto, must ultimately comply with the criteria set forth in the discovery rules.

ing additional time to prepare exhibits." In reply, the prosecutor did not contest that such understanding existed and only objected to the time period of appellee's requested extension for filing additions to her expert witness reports. These circumstances compel this Court to conclude that the ALJ's ruling on the prosecutor's motion to strike appellee's expert witness summaries and testimony was arbitrary or capricious.

Finally, there can be no doubt that appellee was prejudiced by both the ALJ's legal error and arbitrary or capricious action. We have described a trial judge's exclusion of expert witness testimony because of a late filing of an expert witness report as "a draconian sanction." *Maddox v. Stone*, 174 Md.App. 489, 501, 921 A.2d 912 (2007). Appellee's alleged violations of H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B each implicated a breach of a professional rule or a professional standard of care. Appellee needed expert dental practitioners to testify on her behalf in order to challenge the charges that appellee did not document the necessity for certain treatment, completed certain dental procedures in a professionally incompetent manner, and presented false or misleading insurance claims. Appellee also needed such testimony to refute the Board's own expert. The ALJ's ruling, however, deprived appellee of such vital evidence.

Nevertheless, the Board argues that "neither the ALJ nor the Board needed an expert to conclude that [appellee] violated the Act." According to the Board, it was readily apparent from the patient records that appellee failed to document the necessity for certain dental procedures. We conclude, however, that expert testimony was needed to show the standard of care and its application to appellee's records. An expert would have knowledge of dental documenting practices and be able to explain relevant dental terminology. *Compare Clarke v. State*, 97 Md.App. 425, 430–31, 630 A.2d 252 (1993) (stating that expert testimony was needed to explain terminology in medical records and results of a drug test) *with Titan Custom Cabinet, Inc. v. Advance Contracting, Inc.*, 178 Md.App. 209,

229–30, 941 A.2d 547 (2008) (holding that expert testimony was not required to discuss weather records documenting rainfall totals because such "records were not complicated or outside of the ordinary layperson's knowledge"). Without the opportunity to adduce testimony from her own experts and challenge the testimony of the prosecutor's expert witness, appellee was precluded from refuting the prosecutor's allegations. Due to the prejudicial errors of law and the arbitrary or capricious action by the ALJ, the Board's findings of violations as to H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B cannot stand. We therefore shall affirm the trial court's judgment vacating the Board's final order as to these violations and direct that court to remand this case to the OAH for a new hearing on the charges relating to the alleged violations of H.O. § 4–315(a)(6), (16), (18), and ADA Code of Conduct § 5B. Prior to the remand hearing, appellee will be required to comply with COMAR 10.44.07.08(B) and if successful, appellee will be entitled to present expert reports and expert testimony at such hearing.[4]

## II.

### Was there substantial evidence to support the Board's finding of violations of H.O. § 4–315(a)(3) and (22) and COMAR 10.44.23.02?

The Board argues that its final order should be affirmed because there is substantial evidence to support its decision that appellee violated H.O. § 4–315(a)(3), (22), and COMAR 10.44.23.02. According to the Board, it properly determined that appellee's submission of false and misleading insurance claims constituted fraudulent conduct in violation of H.O. § 4–315(a)(3) and (22). The Board also maintains that there was

---

4. Although the circuit court determined that, in accordance with COMAR 10.44.07.08(B)(1)(b), appellee provided a sufficient summary and report of Dr. Pollowitz's proposed testimony and a sufficient summary of Dr. Kirksey's proposed testimony, we need not review those decisions. On remand, appellee will have the opportunity to file additional expert witness reports and/or summaries. Indeed, appellee may choose to call different expert witnesses at the remand hearing.

ample evidence adduced at the administrative hearing that appellee failed to secure informed consent for the removal of sound and serviceable amalgams for a number of patients in contravention of COMAR 10.44.23.02. The Board further notes that it correctly recognized that the ALJ utilized an improper standard of proof.

Appellee counters that the Board's decision to reject the ALJ's proposed conclusions that appellee did not violate H.O. § 4–315(a)(3), (22), and COMAR 10.44.23.02 and to find violations as to those charges constituted an error of law. Appellee maintains the trial court correctly reversed the Board's final order because the Board failed to present sufficient reasoning for rejecting the ALJ's recommendation regarding these charges, especially considering the fact that the Board expressly adopted the ALJ's findings of fact. Specifically, appellee argues that the Board did not set forth any facts in addition to the adopted ALJ's findings of fact to support its conclusions, and the ALJ's findings do not support a ruling that appellee violated H.O. § 4–315(a)(3), (22), or COMAR 10.44.23.02.

## Standard of Review

The Court of Appeals has recently restated the proper standard of review when considering an administrative agency's factual findings:

> We review the agency's factual findings using the substantial evidence test. In applying this test, we ask, after reviewing the evidence in a light most favorable to the administrative agency, "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." We treat "the agency's decision [a]s prima facie correct and presumed valid." It is the agency's province, not ours, to resolve conflicting evidence and to draw inferences from that evidence.

*Colburn v. Dep't of Pub. Safety & Corr. Servs.*, 403 Md. 115, 128, 939 A.2d 716 (2008) (alteration in original) (citations omitted). Despite this presumption, "[i]t is well settled that an agency decision may be affirmed based only on the agen-

cy's findings and for the reasons presented by the agency."
*Bereano v. State Ethics Comm'n,* 403 Md. 716, 755, 944 A.2d
538 (2008) (quotations omitted). Indeed, "where an adminis-
trative ... agency draws impermissible or unreasonable infer-
ences and conclusions ... we owe the agency's decision no
deference." *Id.* at 756 (ellipses in original).

## Analysis

 When examining whether an administrative agen-
cy's decision is based on sufficient evidence, we must start
with an analysis of the factual findings on which the agency
relied to support its conclusion:

> In order to determine whether sufficient evidence existed
> to allow [an administrative agency] to render a decision
> under a correct legal standard, we turn to the factual
> findings provided by the [administrative agency]. As an
> administrative [agency], [it] is required to issue findings of
> fact and conclusions of law in support of its opinion. *See*
> *Mehrling v. Nationwide Ins. Co.,* 371 Md. 40, 62–63 [806
> A.2d 662] (2002) (noting that "administrative agencies are
> required to resolve all significant conflicts in the evidence
> and then chronicle, in the record, full, complete and detailed
> findings of fact and conclusions of law." (quoting *Forman v.*
> *Motor Vehicle Admin.,* 332 Md. 201, 221 [630 A.2d 753]
> (1993))). The Court of Appeals further specified that "find-
> ings of fact must be meaningful and cannot simply repeat
> statutory criteria, broad conclusory statements, or boiler-
> plate resolutions." *Mehrling,* 371 Md. at 62–63 [806 A.2d
> 662] (quoting *Bucktail v. Talbot County,* 352 Md. 530, 553
> [723 A.2d 440] (1999)). The purpose of the findings require-
> ment is threefold: (1) requiring an articulation of the rea-
> soning process makes the decision-maker accountable to the
> public; (2) it allows the injured party to understand the
> reasons behind the agency's decision; and (3) most impor-
> tant, the findings requirement assists in facilitating judicial
> review of the agency's decision. *Sweeney v. Montgomery*
> *County,* 107 Md.App. 187, 197 [667 A.2d 922] (1995) (citing

*Baltimore Gas and Electric Co. v. Public Service Commission,* 75 Md.App. 87 [540 A.2d 820] (1988)).

*Bd. of Cnty. Comm'rs for St. Mary's Cnty. v. S. Res. Mgmt., Inc.,* 154 Md.App. 10, 34–35, 837 A.2d 1059 (2003).

■■■ In its final order, the Board expressly adopted the ALJ's findings of fact. It was upon these findings of fact that the ALJ determined that appellee did *not* violate H.O. § 4–315(a)(3), (22), and COMAR 10.44.23.02. Specifically, the ALJ decided appellee did not contravene H.O. § 4–315(a)(3) because there was no direct or circumstantial evidence that appellee "acted with the purpose, or the intent, to defraud the insurance carriers and her patients." Similarly, the ALJ did not recommend that appellee be found in violation of H.O. § 4–315(a)(22), because the prosecutor failed to prove that appellee submitted a "false claim asserting a fee which is **greater than** the fee the dentist usually accepts as payment in full." Finally, the ALJ believed appellee could not have violated COMAR 10.44.23.02 because, "[b]ased on the record before me, I have declined to find that the amalgam restorations that [appellee] replaced were sound and serviceable."

The Board decided to reject these recommendations of the ALJ and ordered that appellee be found in violation of each of these three provisions. In commenting on the ALJ's belief that appellee did not violate H.O. § 4–315(a)(3) and (22), "the Board [found] to the contrary, concurring with the [State's] argument that the ALJ applied the incorrect standard in rejecting the charged violations. Adding further to the Board's consternation with the ALJ's [sic] is his acceptance of [appellee's] shifting blame for incorrect billing to her employees. The responsibility rests with [appellee]." The Board, however, did not state what was "the incorrect standard" applied by the ALJ, failed to identify the correct standard, and did not set forth any additional facts besides those found by the ALJ to support its finding that appellee "[o]btain[ed] a fee by fraud or attempt[ed] to obtain a fee by fraud," H.O. § 4–315(a)(3), or "[k]nowingly submit[ted] to a third party any claim, form, bill, or statement which contains any misleading,

false, incomplete or fraudulent representation." H.O. § 4–315(a)(22).

With regard to COMAR 10.44.23.02, the Board found that appellee "failed to obtain written informed consent when replacing sound and serviceable amalgams" and then ruled that the "replacement of sound and serviceable amalgams in thirteen patients without written informed consent [was] nothing less than unprofessional conduct, a violation of COMAR 10.44.23.02." Contrastingly, the ALJ declined to recommend a violation of COMAR 10.44.23.02, because the ALJ found that appellee replaced amalgam restorations that were *not* sound and serviceable. Again, the Board did not set forth any additional facts to support its determination aside from those findings made by the ALJ.

The Board summarily relied on "its experience, technical competence, and specialized knowledge [ ] to draw its own conclusions from the record" in formulating its final order. The Board, however, cannot determine violations of the statute, regulations, or ethics code based simply on agency expertise without issuing a "decision [that] contain[s] factual findings on all the material issues of a case and a clear, explicit statement of the agency's rationale." *Fowler*, 394 Md. at 342, 906 A.2d 347. Without the finding of additional facts by the Board and the presentation of sufficient rationale to support its decision, the Board's order is not "sustainable on the agency's findings and for the reasons stated by the agency," *United Steelworkers*, 298 Md. at 679, 472 A.2d 62, and thus is not supported by substantial evidence. We therefore affirm the circuit court's reversal of the Board's order finding that appellee violated H.O. § 4–315(a)(3), (22), and COMAR 10.44.23.02.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MARYLAND STATE BOARD OF DENTAL EXAMINERS.**