CHARLES E. MOYLAN, Jr., Judge,
Retired, specially assigned.
Our reversal of the judgment in this case is on very narrow procedural grounds. We are remanding the case so that the trial judge may conduct a hearing on the appellant’s Motion to Vacate a Default Judgment, and the necessarily attendant question of whether Maryland properly had jurisdiction to hear this case. The jurisdictional contest is between Maryland and Pennsylvania.
The appellant, Mary Roddy-Duncan (“Wife”), and the appellee, Theodore Duncan (“Husband”), were married on March 12, 1988, in Philadelphia. Three children were born to the marriage: 1) Nina, now 14; 2) Jan, now 11; and 3) Theo, now 8, all born in Pennsylvania. At the time of the couple’s separation on January 9, 1999, the family was living in Johns-town, Cambria County, in western Pennsylvania.
After the couple’s separation in 1999, the Husband, who worked for the federal government, was reassigned to the Washington, D.C. area. After living for nine months in northern Virginia, he moved to Montgomery County, Maryland. The Wife remained at all times in Pennsylvania but had moved, by June 2000, from Cambria County to Philadelphia.
Jumping ahead in the legal chronology (we will go back), on August 14, 2002, the Husband filed a Bill of Complaint in the Circuit Court for Montgomery County, asking for 1) an absolute divorce, 2) the custody of the three children, and 3) child support for the children from his Wife. A scheduling conference was held on November 14. There was no appearance by the Wife or by anyone on her behalf. No answer to the *200 complaint was filed by the Wife. A trial date was set for December 27.
On November 27, the Husband moved for an Order of Default, claiming that a copy of the Petition for Absolute Divorce and a Summons had been personally served on the Wife on August 25, requiring her to respond no later than October 25. It further alleged that she had failed to respond and had failed to appear, either in person or by counsel. At the scheduled hearing on December 27, the trial judge granted the Order of Default. It was filed on December 31.
On January 31, 2003, the trial court granted the Husband an absolute divorce from the Wife. The decree also granted him sole legal and physical custody of the three children. It ordered the Wife to pay $1,499.00 per month in child support and further charged her with an arrearage of $7,495.00. The judgment was entered on February 4. At the December 27, 2002, hearing that led to that decree, neither the Wife nor anyone on her behalf appeared.
It is not the ultimate merits that concern us in this case, for they were never the subject of an adversarial hearing. The critical pleading, as we now review the proceedings, was the filing by the Wife, on March 5, 2003, of a pro se Motion to Vacate Judgment, claiming “Lack of Jurisdiction, Proper Service, Duplicate Pleading & Fraud, Mistake and Irregularity.” On March 12, the Husband filed his opposition to that motion. Without either an evidentiary hearing or argument, by counsel or pro se, the court denied the Motion to Vacate on March 28, 2003.
It is that denial of the Motion to Vacate without any further inquiry into its allegations that compels us to reverse in this case. The decision as to whether to conduct a hearing on a motion such as this is, to be sure, entrusted to the discretion of the trial judge. It is furthermore true that an appellate court is extremely deferential when reviewing such exercises of discretion. In this case, however, and on an issue as fundamental as the very jurisdiction of the State of Maryland over the case, we conclude that no less than two “red flags” *201 were up and flying and that either should have caused the court to pause and make further inquiry. We feel confident that either of those “alerts,” had they been noticed by the trial judge, would have caused him serious concern.
SERVICE ON THE WIFE
The first concern should have been with the jurisdiction of the Maryland courts over the person of the Wife. She was at all times a resident of Pennsylvania. Matters as grave as the granting of a divorce, the custody of her three children, and the obligation to pay child support were all decided against her by way of default, without a shred of testimony or a word of argument on her behalf and in her total absence. Default judgment, of course, may sometimes be appropriate and is sometimes necessary, but, because of its fundamentally ex parte nature, should not proceed until the court is completely satisfied that there has been proper notice of the impending proceedings served on the defaulting absentee party-
In her Motion to Vacate, the Wife flatly alleged:
The Defendant here was never served with a summons or complaint for divorce in this matter and her attorney in Pennsylvania informed this Court by letter (Exhibit C) of the matter in Pennsylvania, giving Defendant the impression that this case in Maryland would be dismissed. (Emphasis supplied).
In his motion in opposition, the Husband did not elaborate on the issue of personal service but only referred back to the hearing of December 27, 2002.
That this Court thoroughly dealt with the issues of jurisdiction in its hearing on the 27th day of December, 2002 and that Defendant continually ignored this Court’s notices of hearings.
At the December 27 hearing, there had actually been no testimony with respect to the service of notice on the Wife. Neither of the two witnesses, the Husband or Marlene Young, *202 made mention of the subject. It was the trial judge who, in summing up the legal posture of the case, made mention of an indication in the case file that the Wife had been served.
I also notice in this file that Ms. Duncan, the Defendant, in the Complaint filed, has listed a Philadelphia, Pennsylvania street address. I also notice that in the consent order signed by the parties in Pennsylvania, they agreed that they would exchange children for visitation purposes at a gas station in Joppa, Maryland.
And it actually is indicated in your court file that when the Defendant was served with process in this case, she was served on August 25th, 2002 at the Magnolia Exxon gas station on Pulaski Highway in Joppa, Maryland.
So she was actually served in Maryland, which means that Maryland has personal jurisdiction over her. She has never raised—she’s been served, she’s never raised any issue that Maryland has no jurisdiction over the custody of the children, she’s never raised any objection that Maryland has jurisdiction over the divorce, or she’s never raised any objection that Maryland has personal jurisdiction over her.
(Emphasis supplied).
There was in the case file an Affidavit of Service by Marlene Young, attesting that the Summons had been personally served on the Wife at 8:30 P.M. on August 25, 2002, at the Magnolia Exxon Station at 1101 Pulaski Highway, Joppa, Maryland. The service was not made by a representative of the Sheriffs Department, and in such a case Maryland Rule 2-126(a), in pertinent part, provides:
If service is made by an individual other than a sheriff, the individual shall file proof under affidavit which shall also state that affiant is of the age of 18 or over.
As the Maryland case law states, “It is true ... that a proper return is prima facie evidence of valid service of process and a simple denial of service by the defendant is not sufficient to rebut the presumption arising from such a return.” Sheehy v. Sheehy, 250 Md. 181, 185, 242 A.2d 153 (1968). See also Adkins v. Selbyville Mfg. Co., 134 Md. 497, *203 107 A. 181 (1919). We note, however, that such references to the presumption are in the context of the return of service being made by the sheriff.
In this case, there were, at the very least, indications that some further inquiry was appropriate about the service of a summons upon the Wife. The private process server had made the trip with the Husband from Gaithersburg in Montgomery County to Joppatown in Harford County, where the Husband and Wife were to exchange children for visitation purposes. Marlene Young, after attesting “nor am I otherwise interested in this suit,” gave her address as 58 Golden Ash Way in Gaithersburg. The Summons being served listed the Husband’s address as 58 Golden Ash Way in Gaithersburg. This was a clue, if noticed, that she was no ordinary sheriffs deputy.
At the subsequent December 27 hearing before the trial judge, Marlene Young, the process server, was the only witness other than the Husband to appear on his behalf. Her function at that hearing was in a very different capacity. At the hearing, she gave her address as 58 Golden Ash Way in Gaithersburg, just as he had done. The two had been living in the same house for several years.
Marlene Young’s testimony at the December 27 hearing certainly suggested that, in addition to their living in the same house, there was a close relationship between her and the Husband. She stated of her own personal knowledge that the Husband had not cohabitated with his Wife for so much as one night over the course of the preceding two and one-half years. She stated absolutely that there was not “any hope of a reconciliation between” Husband and Wife. She took care of his three children for approximately five hours every day. She affirmed that the Husband was “a phenomenal father to his children.” For watching the children, Marlene Young received $25 an hour, $125 a day, $600 a week, or approximately $2,580 a month or $30,000 a year. When the Husband works “nights or weekends,” sometimes for “weeks at a time,” Marlene Young is the only person responsible for them.
*204 Marlene Young’s December 27 testimony was enough to cast into question her earlier attestation, “nor am I otherwise interested in this suit” and, at the very least, would have made further inquiry appropriate about the circumstances of the Summons having been served upon the Wife. It clearly would not have been appropriate if the Husband himself had served the Summons. The question naturally arises as to whether Marlene Young was, in ultimate fact, any more neutral as a process server than the Husband would have been.[1]
The validity of the entire default judgment procedure in this case hinged on the legitimacy of the service of process on the *205 Wife by Marlene Young and on both the integrity and the accuracy of Marlene Young’s return on the summons. The trial judge, however, was uninformed about the very existence of any possible questions in those regards. Not misinformed. Uninformed. Our concern in this case is not so much with what was said but with what was not said.
As a one-time, lay process server rather than an experienced professional, did Marlene Young, as she made her return, know what the term of art “personal service” actually amounted to? Would it, in her perception, have been sufficient to tender a piece of paper to the Wife which the Wife did not accept? Would it have been sufficient to have waved a piece of paper in front of the Wife? In an ex parte proceeding where there is no adversary to ask questions, how do such questions get raised? In an ex parte proceeding particularly, therefore, is there any obligation on counsel, as an officer of the court, to raise questions in which the judge might be very interested but of which the judge is obviously unaware? We do not suggest an answer. We only raise a question.
In this case, it might be very revealing to hear the testimony of both the Wife and of Marlene Young, under oath and in detail, as to what actually happened at the Magnolia Exxon Station in Joppatown. Counsel’s bland generality that “service was made” simply will not serve. When the Wife alleged, in her Motion to Vacate the Judgment, that she “was never served,” the Husband’s unilluminating response that “this Court thoroughly dealt with the issues of jurisdiction in its hearing on the 27th day of December, 2002” is a masterpiece of deft avoidance. The questions we have asked above were never raised, let alone resolved, at the hearing on December 27. At a hearing, on remand, the judge may well be interested in some answers to what was, at the least, an unorthodox modality of service.
The Pendency of the Divorce Case in Pennsylvania
An even more serious concern is the jurisdiction of Maryland over the subject matter of this case. It was clearly brought to the attention of the trial judge that there had at *206 one time been pending litigation between the Husband and the Wife in Pennsylvania. As to the status of that litigation, however, the judge was selectively furnished with an only partial status report.
Immediately following the separation of the Husband and the Wife in January of 1999, the Wife filed her Complaint for Divorce and Child Custody on January 27, 1999, in the Court of Common Pleas of Cambria County, Pennsylvania. The Husband filed an Answer to the Complaint in that same court on April 4, 1999. On June 16, 2000, an Amended Interim Order from the Cambria County Court addressed the issue of child custody. The Husband and Wife were to share legal custody but the Husband was awarded primary physical custody. The Cambria County Court retained jurisdiction over the matter. On December 4, 2000, a Consent Order was filed by the Cambria County Court, essentially confirming the earlier custody determination but making it clear that the Wife enjoyed “partial physical custody.” Once again, the Cambria County Court asserted that it was retaining jurisdiction over the matter.
Both the June 16, 2000 and the December 4, 2000 orders of the Pennsylvania Court, affecting only custody, were filed in the Maryland action. Nothing concerning the pending divorce action in Pennsylvania, however, was filed. At the December 27 hearing in Maryland, notwithstanding that passing allusions to the Pennsylvania divorce proceedings may have been made, the judge was under the distinct impression that there was pending in Pennsylvania only a custody case and not a divorce case.
THE COURT: I was looking through the Court file and I noticed that Mr. Duncan filed his complaint for divorce here in this Court in August of this year, he attached to his complaint a copy of a consent order of December b, 2000 in the Court of Common Pleas in Cambria County, Pennsylvania. And that order indicated that the parties would have joint legal custody; the children would live primarily with their father, provide for visitation; and then in the last paragraph, one entitled Jurisdiction, it indicates that the *207 court in Pennsylvania would retain jurisdiction over this matter. And that matter then was, it appears to me, a custody case; not a divorce case, but custody of the children.
(Emphasis supplied). Significantly, counsel for the Husband did absolutely nothing to disabuse the trial judge of that critical misapprehension. A very effective modality of deception is to relate and to emphasize partial information while remaining discreetly low-keyed about other critical information.
What the Husband did not file with the court was a copy of the Wife’s divorce action of January 27, 1999. More significantly, the judge was not informed about events that were actively proceeding immediately prior to the Husband’s filing of his divorce action in Montgomery County on August 14, 2002. On May 15, the Husband had moved in Cambria County to have the divorce case transferred to Maryland. On June 3, the Cambria County Court had signed an Order denying the Motion to Transfer. On June 19, the Husband had moved in Cambria County to have his Wife’s divorce action dismissed. On July 21, the Cambria County Court had signed an Order denying the Motion to Dismiss.
Three weeks later, the Husband filed for divorce in Montgomery County without mentioning the pertinent Pennsylvania proceedings over the preceding three months. There were only vague generalities about the Husband’s frustration with the inactivity of Pennsylvania. When the Pennsylvania court denied the Husband’s request to transfer the divorce case to Maryland, the Husband made the unilateral decision to transfer the case to Maryland. He, in effect, preempted the Pennsylvania court. Neither Maryland nor Pennsylvania was informed, however, about the high-handed nature of the Husband’s unilateral action. There are troubling indications that the Husband attempted to slip this case into the Maryland court system under the radar screen.
The pattern of deception continued right up to the hearing of December 27, 2002, in Maryland. The Pennsylvania divorce case had been delayed not because of Pennsylvania’s lassitude, *208 but because of the dilatoriness of the Husband in providing information about his government pension. The case was ultimately scheduled for a hearing in Pennsylvania on both the divorce and alimony pendente lite issues on December 11, 2002, just 16 days before the scheduled hearing in Maryland. Without mentioning the Maryland action, the Husband requested and received a continuance of the Pennsylvania hearing, ostensibly so that he “could have some medical testing done.” The bona fides of that request may well raise an eyebrow in Cambria County, Pennsylvania.
Following the default judgment in Maryland, a hearing officer in Cambria County, Pennsylvania, filed, on June 24, 2003, a report recounting the Husband’s pattern of deception and characterizing the Husband’s procedural behavior.

It appears that the Defendant has [abused] the judicial system in Maryland and Pennsylvania to his best advantage. It is clear that he failed to notify the Maryland Court that there were pending actions relative to divorce, equitable distribution, alimony, spousal support, alimony pendente lite, pending in Pennsylvania and proceeded to [deceive] the court by claiming service on the Plaintiff when none was made.

From the information in the transcript, it appears that the Defendant’s girlfriend tried to serve the Plaintiff with a copy of the judicial proceedings in Maryland, but was unsuccessful, but failed to notify the Court of his lack of service. Under Pennsylvania law, until all issues are settled, the Defendant is obligated to continue paying support to the spouse as [alimony pendente lite]. It is clear from the Maryland order that all issues were not resolved as at least costs and counsel fees claimed by the Plaintiff were never addressed although the Defendant did talk the Court into granting him his full pension because the plaintiff was never at that hearing having never been advised of the same.
(Emphasis supplied).
On a number of issues, Maryland and Pennsylvania resolved this case in conflicting directions, an embarrassing situation *209 that would never have occurred had the Maryland judge been fully apprised of the conflict and had the two court systems consequently been in communication with each other. As the Pennsylvania hearing officer concluded:
This Hearing Officer understands that the Plaintiff has taken action in the state of Maryland to mediate the current divorce order. It is also clear that the Defendant used the judicial system to his advantage to [de]fraud Plaintiff of her property rights.
Accordingly, it is believed that an APL Order with a wage attachment is appropriate and this Hearing Officer finds that the Defendant shall pay the sum of $1,000.00 per month as APL to the Plaintiff pending the resolution of the jurisdiction issue as well as other outstanding issues present here in Pennsylvania.
(Emphasis supplied).
The Pennsylvania hearing officer concluded that the Husband had deliberately misled the Maryland court into believing that there was no still pending divorce case in Pennsylvania.
At the time the Defendant filed this divorce action in Maryland, a divorce action had been filed and pending in this commonwealth since January of 1999, and in fact, the Defendant, through his attorney, I. Samuel Kaminsky, filed an answer and counter claim on April 6, 1999, and there has been considerable litigation since that time.
In May of 2002, the Defendant filed a motion to transfer the divorce case to Montgomery County, Maryland which was denied by order dated June 3rd, 2002, by Judge Thomas Swope. In spite of that, apparently in August of 2002, the Defendant filed his own divorce complaint in Maryland and never effectuated service on the Plaintiff. A review of the transcript from the hearing on the divorce dated December 27th, 2002, appears that the Defendant is claiming personal service of the Divorce complaint, but Plaintiff is claiming that the Defendant’s girlfriend tried to hand her an *210 envelope that she did not take in August of 2002, thereby denying service.
A review of the same transcript indicated that the Defendant did talk about a divorce action being filed in Pennsylvania, but he did not attach said divorce action to his complaint for divorce, but only a copy of the custody order from this Court. The transcript leads this Hearing Officer to believe that the Court, by citing the custody order, indicated that that was just a custody order and not a divorce complaint and they have been intentionally or otherwise misled that there was no divorce action here in Pennsylvania pending.
Prior to the divorce hearing in Maryland, this matter was scheduled for a hearing on the divorce and alimony pendente lite in Domestic Relations in Cambria County for December 11th, 2002. Attorney Corcoran who then represented Mr. Duncan requested a continuance so Mr. Duncan, the Defendant, could have some medical testing done, thereafter, Mr. Duncan proceeded to the hearing on December 27th, 2002, in Maryland and had the final decree of divorce issued on January 31st, 2003.
(Emphasis supplied).
An order was entered by the Circuit Court for Cambria County, Pennsylvania, on July 21, 2003, adopting the recommendations of the hearing officer that had been filed on June 24, 2003. Prior to that order, the Husband had moved in the Cambria County Court to have the Wife’s pending divorce case dismissed on the basis of the divorce decree in Maryland. On July 21, 2003, Judge Thomas A. Swope, Jr., denied the Husband’s Motion to Dismiss the pending divorce action. The Husband subsequently renewed his Motion to Dismiss, on the same grounds, before another judge. On October 10, 2003, Judge F. Joseph Leahey also denied the Husband’s Motion to Dismiss the pending divorce action in Pennsylvania. Notwithstanding the judgment of divorce in Maryland, the divorce action is still pending in Pennsylvania, where it had originally *211 been filed. In terms of interstate comity, the actions of the Husband and his counsel have placed Maryland in an awkward and embarrassing posture.
The Existing Custody Decisions in Pennsylvania
Even if this case involved only custody and not divorce, it is clear that it would have to be sent back. The Uniform Child Custody Jurisdiction Act, of which Maryland is a signatory, insists upon complete and effective interstate communication when one state is considering entertaining a custody action when custody proceedings are still pending in another state. Maryland Code, Family Law Article, § 9-206(a) squarely requires that Maryland defer exercising jurisdiction until the proceeding in another state has been stayed.
[A] court of this State shall not exercise its jurisdiction under this subtitle if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subtitle, unless the proceeding is stayed by the court of the other state.
(Emphasis supplied).
Section 9-206(b) requires a Maryland court sua sponte to determine whether custody proceedings are still pending in another state.
(b) Inquiry before hearing as to proceeding in other state—Before hearing the petition in a custody proceeding, the court shall examine the pleadings and other information supplied by the parties under § 9-209 of this subtitle and, shall consult the child custody registry established under § 9-216 of this subtitle concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state, it shall direct an inquiry to the state court administrator or other appropriate official of the other state.
(Emphasis supplied).
Section 9-206(c) deals expressly with communication between the courts of the respective states.
*212 (c) Stay during proceeding.—If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction, it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with §§ 9-219 through 9-222 of this subtitle.
(Emphasis supplied).
In Harris v. Simmons, 110 Md.App. 95, 102-03, 676 A.2d 944 (1996), Judge Salmon, after pointing out that the Uniform Child Custody Jurisdiction Act had first been proposed in 1968 and had been adopted by all 50 states as of 1984, described its salutary purposes.
The general purposes of the UCCJA are to avoid jurisdictional conflict with courts of other states; to assure that litigation takes place in the state with which the child and the child’s family have the closest connection and where significant evidence concerning the child’s care, protection, and personal relationships is most readily available, and that courts decline to exercise jurisdiction when the child and the child’s family have a closer connection with another state; and to avoid relitigation of custody decisions of other states “insofar as feasible. ”
(Emphasis supplied).
In Malik v. Malik, 99 Md.App. 521, 526, 638 A.2d 1184 (1994), Judge (now Chief Judge) Murphy pointed out that the type of jurisdictional conflict that resulted in this case is the very thing that the Uniform Act is designed to avoid.
The U.C.C.J.A. has been adopted with minor variations in all fifty states and the District of Columbia. One of the act’s main objectives is “to avoid jurisdictional conflict ... in matters of child custody.”
(Emphasis supplied).
In Paltrow v. Paltrow, 37 Md.App. 191, 197, 376 A.2d 1134 (1977), aff'd, 283 Md. 291, 388 A.2d 547 (1978), this Court *213 spoke of the sua sponte obligation of the Maryland courts to explore the pendency of custody proceedings in sister states.
We think it plain from the statement of purposes and the other sections cited that an equity court in a, proceeding relating to child, custody has an affirmative duty to examine the question of the pendency of proceedings elsewhere in Maryland or in other jurisdictions and should do so of its own motion even if the issue is not raised by the parties them,selves. We also consider it not only proper but necessary for a court of this State to determine, as a preliminary matter, whether to exercise its jurisdiction where it becomes apparent that a proceeding concerning the custody of the child or children is pending in a court in another jurisdiction. This indeed is the mandate of the Act.
(Emphasis supplied).
In Etter v. Etter, 43 Md.App. 395, 398, 405 A.2d 760 (1979), this Court quoted with approval from Carson v. Carson, 29 Or.App. 861, 565 P.2d 763, 764-65 (1977), in describing the multi-step process in determining jurisdiction.
Under the Act the court must go through a multistep process in determining whether to exercise jurisdiction. First, it must ascertain whether it has jurisdiction.... If it finds that there is jurisdiction, then the court must determine whether there is a custody proceeding pending or a decree in another state which presently has jurisdiction. If so, the ... court must decline to exercise its jurisdiction.
See also Olson v. Olson, 64 Md.App. 154, 159-67, 494 A.2d 737 (1985); Malik v. Malik, supra, 99 Md.App. at 526, 638 A.2d 1184; Gestl v. Frederick, 133 Md.App. 216, 224-27, 754 A.2d 1087 (2000); Britton v. Meier, 148 Md.App. 419, 430, 812 A.2d 1082 (2002). The point is that when two states are possibly involved in the same or overlapping litigation, neither should plow forward unilaterally without at least consulting the other.
There are strong indications that the Husband did, in the words of the Pennsylvania hearing officer, “abuse the judicial system in Maryland and Pennsylvania to his best advantage.” There are strong indications that the Maryland trial judge *214 may have been deliberately misled by being selectively furnished with partial information. Under those circumstances, we deem it appropriate to reverse the judgment and to remand the case to Montgomery County so that the trial judge may reconsider the Motion to Vacate the Judgment at an adversary hearing with the benefit of full argument and possible evidentiary input from both parties. The judge may also wish to consider whether there were any ethical lapses in the manner in which the case was originally presented to him.
JUDGMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

. With respect to the issue of custody, moreover, it would appear that the alleged notice to the Wife was inadequate even if, arguendo, it were to be assumed that Marlene Young had properly done everything that her Affidavit of Service indicated that she did. That Affidavit is the only evidence we have of notice to the Wife. The sum total of its critical attestation is, "I caused the Summons to be served upon the Defendant.”
The reference clearly is to the Writ of Summons issued by the Clerk of the Court for Montgomery County on August 19, 2002. That one-page Writ of Summons, in turn, makes no mention of custody as the subject of litigation. In Van Schaik v. Van Schaik, 90 Md.App. 725, 738-39, 603 A.2d 908 (1992), Judge Cathell was very clear about the requirement of notice on the issue of custody.
Finally, appellant was not given proper notice that matters relating to custody were to be the subject of the hearing at issue. The notice provided only for a hearing on “visitation and child’s possessions.” Section 9-205 of the Family Law Article provides that:
Before making a decree under this subtitle, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child.
It is clear that if a court is contemplating holding a hearing at which it will, or may, determine custody issues, a parent with custodial rights, or one who has the right to claim custody, must be notified that such an issue may be the subject of the hearing. The notice in the case at bar did not notify either parent that the court was contemplating making a custody decision----
It cannot even be reasonably argued that Van Schaik had an opportunity for effective argument on the issue of custody when there was no notice at all that it would be considered nor any discussion during the hearing itself of that issue. Appellant's first notice that custody was to be determined was when he was divested of it in the court’s decree at the conclusion of the hearing.
(Emphasis supplied).