REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2551

September Term, 2012

KEITH N. WILSON

v.

MARYLAND DEPARTMENT
OF THE ENVIRONMENT

Krauser, C.J.,
Graeff,
Berger,

JJ.

Opinion by Graeff, J.

Filed: May 27, 2014

This appeal arises from an action brought by the Maryland Department of the Environment ("MDE"), appellee, against Keith N. Wilson, appellant, based on Mr. Wilson's ownership of two properties in Baltimore City that are subject to laws aimed at protecting tenants from lead paint exposure. Specifically, after MDE determined that Mr. Wilson had failed to certify that the two properties complied with lead paint risk reduction standards prior to admitting new tenants, as required, it issued an administrative complaint and order requiring Mr. Wilson to bring all occupied properties into compliance, as well as assessing an administrative penalty in the amount of $30,000.

An Administrative Law Judge ("ALJ") issued a Default Order against Mr. Wilson for failing to respond to the complaint. The ALJ subsequently denied Mr. Wilson's motion to vacate the default order, and Mr. Wilson sought judicial review in the Circuit Court for Baltimore City, which affirmed the ALJ's decision.

On appeal, Mr. Wilson presents two questions for our review,[1] which we have reordered and rephrased as follows:

1. Did the ALJ err in denying Mr. Wilson's Motion to Vacate the default judgment?

_____

[1] Mr. Wilson's questions presented to the Court are as follows:

1. Did the Circuit Court err in refusing to order the administrative agency to reopen its hearing to take additional evidence, where the agency had refused to open a default order despite an affidavit from the Appellant that he had not received personal service of the notice of hearing[?]

2. Did the Circuit Court err in refusing to reverse the MDE's decision for a hearing on the basis that Wilson had shown a meritorious defense and an excuse for responding to the complaint?

2.      Did the circuit court err in denying Mr. Wilson's Motion for Leave to Present Additional Evidence?

For the reasons set forth below, we shall vacate the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Wilson is the owner of 39 residential properties in Baltimore. Because they were built before 1950, the properties are classified as "Affected Properties" under Maryland Code, Title 6, Subtitle 8 of the Environment Article, governing "Reduction of Lead Risk in Housing." *See* Md. Code (2010 Supp.) § 6-801 of the Environment Article ("Envir.") ("'Affected property' means: (i) A property constructed before 1950 that contains at least one rental dwelling unit.").

Envir. § 6-811 requires owners of an Affected Property to register the property with MDE, and Envir. § 6-812 requires owners to renew the registration for the property annually. Owners of Affected Properties must take certain actions each time there is a change in occupancy at the property. Specifically, the property must either pass a test that detects lead-contaminated dust,[2] or the owner must perform specific lead hazard reduction treatments. Envir. § 6-815(a)-(b). If the property is unable to pass the test for the presence of lead contaminated dust, and the owner must perform lead hazard reduction treatments, the owner must have "the property inspected to verify that the risk reduction standard . . . has been

_____

[2] Maryland Code (2010 Supp.) § 6-816 of the Environment Article provides that MDE "shall establish procedures and standards for the lead-contaminated dust testing by regulation."

-2-

satisfied." Envir. § 6-815(c). MDE may, "at any time, spot check affected properties that have been reported as satisfying the risk reduction standard or verified as satisfying the modified risk reduction standard," and if the check reveals that the Affected Property is not in compliance with the risk reduction standard, MDE may order the owner to comply. Envir. § 6-852. The purpose of this statutory scheme is to "reduce the incidence of childhood lead poisoning, while maintaining the stock of available affordable rental housing." Envir. § 6-802.

On April 28, 2000, Mr. Wilson began registering Affected Properties with MDE and renewing his registration annually in accordance with the statute. On June 3, 2010, Mark Borgoyn, an MDE inspector, conducted a site inspection and tenant interview at 2224 Christian Street, one of Mr. Wilson's properties. The tenant informed Mr. Borgoyn that he had moved to the Christian Street residence on April 1, 2010. Mr. Borgoyn noted that, despite the change in occupancy on April 1, 2010, Mr. Wilson had failed to obtain a certificate indicating that the property had been inspected and that the risk reduction standard had been satisfied, in violation of Envir. § 6-815.

On August 17, 2010, Mr. Borgoyn conducted a site inspection and tenant interview at another property belonging to Mr. Wilson, 1938 Christian Street. The tenant reported to Mr. Borgoyn that he had moved into the property in September 2009. Again, Mr. Wilson failed to obtain a certificate indicating that the property had been inspected and the risk reduction standard had been satisfied, in violation of Envir. § 6-815.

On October 5, 2010, MDE filed an Administrative Complaint, Order, and Penalty against Mr. Wilson based on the two violations of Envir. § 6-815. Specifically, it alleged that, "from April 10, 2010, through June 3, 2010, Keith Wilson failed to bring 2224 Christian Street into compliance with the full risk reduction standard, in violation of § 6-815," and that "[d]uring the period of October 1, 2009, through August 17, 2010, Keith Wilson failed to bring 1938 Christian Street into compliance with the full risk reduction standard, in violation of § 6-815." MDE asserted that, as of the date of its complaint, it still had not received full risk reduction certificates for the two properties.

MDE's administrative order provided that, within 30 days of the receipt of its complaint and administrative order, Mr. Wilson "shall bring all occupied Wilson Affected Properties into compliance" with the risk reductions standard set forth in the Code. It further ordered, in part, that Mr. Wilson ensure that no children under the age of six and no pregnant women be present during the performance of lead hazard reduction treatments, that he pay reasonable expenses for relocating his tenants should the lead hazard reduction treatments take more than one day, and that, within five days of the completion of the lead hazard reduction treatments, Mr. Wilson ensure that the Affected Properties are inspected by an accredited inspector and certificates of compliance be filed with MDE and provided to the tenants. In addition, based on the two violations of Envir. § 6-815, MDE sought a $30,000 penalty against Mr. Wilson.

MDE's Administrative Complaint, Order, and Penalty informed Mr. Wilson of his right to a hearing to contest the contents of MDE's filing. To contest the Order portion of the filing, Mr. Wilson was required to file a written request within 10 calendar days of receiving the Complaint, Order, and Penalty. *See* Envir. § 7-261(b) ("Within 10 days after being served with an order under § 7-259(a)(1) [governing orders for corrective action] of this subtitle, the person served may request, in writing, a hearing before the Department."). To contest the Penalty portion of the document, Mr. Wilson had to file a written request for a hearing within 30 days. *See* Code of Maryland Regulations ("COMAR") 26.01.02.05C (a contested case hearing "shall be requested . . . 30 days after notice is served, unless otherwise provided by law"). MDE advised that, if Mr. Wilson chose "not to request a hearing within the times required, the Order will become final from the date issued, and [MDE] will seek a default order requiring [Mr. Wilson] to pay the entire penalty."

On April 24, 2012, MDE filed with the Office of Administrative Hearings ("OAH") a Request for Final Default Order Assessing Administrative Penalties for Failure to Request a Hearing. It contended that Mr. Wilson had failed to request a hearing on the Administrative Complaint, Order, and Penalty.[3] MDE further asserted that, "[p]ursuant to § 7-262(a) of the Environment Article, the Order portion of the Complaint is now a Final

---

[3] Attached to MDE's request was an affidavit by Lisa Kelly, an Administrative Specialist in the MDE Lead Poisoning Prevention Program (the "Program"), who was tasked with processing all requests for hearings for the Program. Ms. Kelly attested that, as of that date, MDE had not received a request for a hearing from Mr. Wilson.

Administrative Order." *See* Envir. § 7-262(a)(1) ("Unless the person served with an order . . . makes a timely request for a hearing, the order is a final order."). Accordingly, MDE requested that the ALJ enter a Final Default Order against Mr. Wilson, assessing an administrative penalty of $30,000.

MDE asserted that, on March 25, 2011, Mr. Wilson was served with the Administrative Complaint, Order, and Penalty via a private process server. It attached an affidavit by the process server stating that the complaint was served, i.e., "Accepted by Corey Blandon, co-resident" at 27 South Calhoun St, Unit 1, in Baltimore. MDE attested that it mailed a copy of its request for a default order to Mr. Wilson at 27 South Calhoun Street, Unit 1, in Baltimore.

On May 8, 2012, the ALJ issued a Default Order, finding Mr. Wilson in default. The ALJ noted that COMAR 26.01.02.13A provides as follows:

> If after receiving proper notice a party fails to timely request a hearing, or to attend or participate in a prehearing conference, hearing, or other stage of an adjudicative proceeding, either the hearing examiner or final decision maker, whichever person is appropriate, may proceed in that party's absence, may rely on affidavits, or may conduct hearings as appropriate. Upon a prima facie showing by the moving party, the final decision maker may issue a final default order against the defaulting party.

The OAH's procedural rules, set forth in COMAR 28.02.01.23A, similarly provide that, if a party fails to participate in a hearing after receiving proper notice, "the judge may proceed in that party's absence or may . . . issue a final . . . default order against the defaulting party."

The ALJ ordered that Mr. Wilson was "required to comply with . . . Maryland's laws pertaining to the reduction of lead paint hazards in rental housing, as set forth in the Order," and he granted MDE's request for a penalty assessment of $30,000. The Default Order further provided that, within 30 days, Mr. Wilson could file a written motion to modify or vacate the Default Order. If Mr. Wilson did not show good cause to excuse his default, the order was to become final and enforceable. The Default Order was mailed to Mr. Wilson at 27 South Calhoun Street, Unit 1, in Baltimore.

On July 3, 2012, Mr. Wilson filed a Motion to Vacate Default Order.[4] He asserted that "[t]he service of paperwork that was supposed to serve as my notification was not handled properly," and he attached an affidavit of Mr. Blandon, "the person named as receiving service." The affidavit stated, in part, as follows:

> 2. On the night I was supposed to have been served this paperwork, March 25, 2011, at 9:30pm, I yelled at the process server from the 2nd floor window that I would not accept any papers for my landlord, Keith N. Wilson. I stated this more than once.
> 3. The police officers who accompanied the process server asked my name, and I gave it to them. This is the only reason the process server named me as accepting service. I never took any papers from the process server, I told him I would not accept service, and that he should come back when Mr. Wilson was available - in the morning.
> 4. I never received any paperwork from the process server, and was not made aware that I would be named as having accepted service.

---

[4] Mr. Wilson inserted a date of June 7, 2012, in the motion, but the cover letter of the motion is dated stamped as having been received by the court on July 3, 2012, beyond the 30 day deadline set forth in the Default Order. The ALJ, nonetheless, treated Mr. Wilson's motion as timely filed.

Below his signature on the motion to vacate, Mr. Wilson listed his address as "27 S. Calhoun Street, First Floor," in Baltimore. Below his signature on his affidavit, Mr. Blandon listed his address as "27 S. Calhoun Street, Second Floor, Baltimore, MD."[5]

On August 15, 2012, the ALJ issued his ruling on Mr. Wilson's Motion to Vacate. In rejecting Mr. Wilson's claim of defective service, the ALJ found that: (1) the affidavit from the private process server that accompanied MDE's request for a default order "contradicts Mr. Blandon"; (2) Mr. Wilson "was sent documents by ordinary mail as well, and there is no evidence that the mail was returned by the U.S. Postal Service";[6] and (3) in his motion, Mr. Wilson "explains why he is not in violation of the lead paint reduction laws, establishing that he received the documents."[7]

The ALJ further found as follows:

---

[5] Mr. Wilson also asserted in his motion to vacate default order several defenses to MDE's complaint. He stated that he was "undertaking getting my properties into compliance with the law" with "inspections scheduled for some of my properties this very month, June 2012," that he has "strived to keep my properties from good condition and free from lead paint," and that he hired a property management company to ensure his properties were in compliance with the law, but the property management company had "failed miserably in their job." He also asserted that he had obtained "lead-paint certificates on the property" and that he had received assurances "from the staff at [MDE] and Baltimore Housing" that his certificates were in good order.

[6] As indicated, MDE's request for a default order and the default order itself were mailed to Mr. Wilson's address at 27 South Calhoun Street, Unit 1, in Baltimore.

[7] In his Motion to Modify or Vacate Default Order, Mr. Wilson argued that he "was unaware that any lead paint action against me or my properties was still happening," and he was "undertaking getting [his] properties into compliance with the law." We note, however, that the default order, which he clearly received and was seeking to vacate, stated that he had been found to have violated the lead paint laws.

The Complaint is clearly written and sets forth the time periods to file a request for a hearing. [Mr. Wilson] must have known that the letters he received from the MDE by mail involved his non-compliance with applicable lead paint reduction laws. Additionally, I find that the private process server served Mr. Blandon, who accepted service. . . .

[Mr. Wilson] was served with the Complaint and did not respond in a timely manner. He had sufficient time to respond to the Complaint but he chose not to. The rationale offered for not timely filing is unpersuasive. Not only did [Mr. Wilson] fail to timely request a hearing, he did not respond to MDE's request for a final default order assessing administrative penalties for failure to request a hearing, which was sent to him on April 23, 2012.

The ALJ determined that Mr. Wilson's arguments regarding service "do not constitute good cause for failing to respond to the documents issued by the MDE." Accordingly, he denied Mr. Wilson's request to vacate the Final Default Order, rendering the Final Default Order final and enforceable.

On September 13, 2012, Mr. Wilson, acting *pro se*, filed a Petition for Judicial Review in the circuit court. He asserted that the ALJ's ruling "offers no reasons why the unnamed process server's affidavit of service is more persuasive than the signed affidavit of [Mr.] Blandon who refused service."

On January 4, 2013, acting through counsel, Mr. Wilson filed a Motion for Leave to Present Additional Evidence. Specifically, he requested that the court remand the case to the ALJ to allow the ALJ to take additional evidence, in accordance with Maryland Code (2012 Supp.) § 10-222(f) of the State Government Article ("S.G."). This statute provides that, when reviewing a final administrative decision in a contested case, a circuit court "may order

the presiding officer to take additional evidence on terms that the court considers proper" if

the following conditions are met:

> (i) before the hearing date in court, a party applies for leave to offer additional evidence; and
> (ii) the court is satisfied that:
> > 1. the evidence is material; and
> > 2. there were good reasons for the failure to offer the evidence in the proceeding before the presiding officer.

S.G. § 10-222(f)(2). If the court remands the case to allow for additional evidence, "the final

decision maker may modify the findings and decision" based on that evidence, and shall file

with the circuit court the additional evidence, as well as "any modifications of the findings

or decision." S.G. § 10-222(f)(3)-(4).

Mr. Wilson argued that his request was proper because he "did not receive due process

in the administrative hearing level." Specifically, Mr. Wilson asserted that the hearing

examiner did not consider constitutional violations inherent in the nature of service, i.e., that

the person alleged to have been served was a tenant, rather than a co-resident, and therefore,

he was not a "resident of suitable age and discretion."[8]

Mr. Wilson further contended that "[h]e has a meritorious defense to the allegations

against him, but was unable to be heard because he was not properly notified of his rights."

He asserted that the circuit court would "be better able to address the issues in the matter if

the hearing officer at the [OAH] first hears from both parties and makes specific findings of

---

[8] Pursuant to Maryland Rule 2-121(a)(2), a person may be served "by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion."

-10-

fact." Mr. Wilson requested that the court order the ALJ to take additional evidence on the inadequacy of service, as well as "the impropriety of levying fines on him despite his evident compliance."

On January 16, 2013, after a hearing, the circuit court issued its order affirming the decision of MDE and the ALJ.[9] In a Memorandum Opinion issued the same day, the court determined that the ALJ's finding that Mr. Wilson had failed to establish good cause for not requesting a hearing to contest MDE's administrative order was supported by substantial evidence and was correct as a matter of law. The court noted that, although there was conflicting evidence regarding service, the ALJ credited the affidavit of the process server, which was his province as the fact finder.

In a footnote to its Memorandum Opinion, the court addressed Mr. Wilson's "Motion for Leave to Present Additional Evidence." The court noted that, under S.G. § 10-222(f), judicial review of "disputed issues of fact shall be confined to the record." It recognized, however, that it could order the ALJ to take additional evidence if it was "satisfied that the evidence is material; and there were good reasons for the failure to offer the evidence in the proceeding before the presiding officer." *Id*. The court found that "[n]o such showing has been made in this case." It rejected Mr. Wilson's argument that his *pro se* representation constituted "good reasons," noting that this Court has held that "giving the appellee a 'second bite at the apple' simply because he was not represented by counsel during the administrative

_____

[9] The order was entered on February 13, 2013.

-11-

hearings" was error. (Citing *Dep't of Labor, Licensing, and Regulation v. Woodie*, 128 Md. App. 398, 410-11 (1999)).

This timely appeal followed.

## STANDARD OF REVIEW

Judicial review of an administrative decision "generally is a 'narrow and highly deferential inquiry.'" *Seminary Galleria, LLC v. Dulaney Valley Improvement Ass'n*, 192 Md. App. 719, 733 (2010) (quoting *Maryland-Nat'l Park & Planning Comm'n v. Greater Baden-Aquasco Citizens Ass'n*, 412 Md. 73, 83 (2009)). This Court looks "through the circuit court's decision and evaluates the decision of the agency," *Chesapeake Bay Foundation v. Clickner*, 192 Md. App. 172, 181 (2010), determining "'if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.'" *Cosby v. Dep't of Human Res.*, 425 Md. 629, 638 (2012) (quoting *Bd. of Phys. Quality Assurance v. Banks*, 354 Md. 59, 67-68 (1999)).

With respect to the agency's factual findings, the substantial evidence test "'requires us to affirm an agency decision, if, after reviewing the evidence in a light most favorable to the agency, we find a reasoning mind reasonably could have reached the factual conclusion the agency reached.'" *Miller v. City of Annapolis Historic Pres. Comm'n*, 200 Md. App. 612, 632 (2011) (quoting *Montgomery County v. Longo*, 187 Md. App. 25, 49 (2009)). *Accord Bucktail, LLC v. Cnty Council of Talbot Cnty*, 352 Md. 530, 553 (1999) ("'In a

judicial review of administrative action the court may only uphold the agency order if it is sustained by the agency's findings and for the reasons stated by the agency.'") (quoting *Harford Cnty v. Earl E. Preston, Jr., Inc.*, 322 Md. 493, 505 (1991)).  When reviewing an agency's conclusions of law, we "'must determine whether the agency interpreted and applied the correct principles of law governing the case and no deference is given to a decision based solely on an error of law.'" *Bd. of Dental Exam'rs v. Tabb*, 199 Md. App. 352, 373 (2011) (quoting *Solomon v. Bd. of Phys. Quality Assurance*, 155 Md. App. 687, 696-97 (2003)).

Additionally, as the reviewing court, we "may not pass upon for the first time issues not encompassed in the final decision of the administrative agency." *Cross v. Baltimore City Police Dep't*, 213 Md. App. 294, 307 (2013).  "Stated differently, an appellate court will review an adjudicatory agency decision solely on the grounds relied upon by the agency." *Dep't of Health & Mental Hygiene v. Campbell*, 364 Md. 108, 123 (2001).

## DISCUSSION

Mr. Wilson contends that the ALJ erred in denying his motion to vacate the order of default because he was not properly served with MDE's complaint.  He asserts that service was defective in several ways.  First, he argues that the affidavit of the process server did not include the printed name, address, and telephone number of the server, as required by the Maryland Rules.  Second, he notes that Mr. Blandon's affidavit states, contrary to the affidavit of the process server, that he refused to accept service.  Mr. Wilson  contends that

-13-

the ALJ's determination that he had been served, based on resolution of a credibility issue in the two affidavits, was improper. Third, he contends that Mr. Blandon's affidavit stated that he was a tenant, not a co-resident, and therefore, even if the complaint was served on him, it was not proper because he did not qualify as a "resident of suitable age and discretion."

MDE contends that the ALJ's decision to deny Mr. Wilson's motion to vacate "was supported by substantial evidence in the record" and was correct as a matter of law. Specifically, it argues that there was evidence, including the affidavit of the process server, that Mr. Wilson had received the materials filed by MDE. Accordingly, MDE asserts, there was substantive evidence to support the ALJ's finding that Mr. Wilson was properly served and failed to timely request a hearing. MDE contends that, in light of Mr. Wilson's failure to request a hearing, the circuit court properly upheld the ALJ's findings that Mr. Wilson was in default and had failed to show good cause such that the default order should be vacated.

COMAR 28.02.01.23(B) sets forth the default order procedures for the OAH. Specifically, it provides as follows:

> (1) Unless otherwise provided by law, a party may move to vacate a final order of default within 30 days after the date of the order. The motion shall state the reasons for the failure to attend or participate in the proceeding.
>
> (2) If the judge finds that there is good cause for the party's failure to attend or participate in the proceeding, the judge shall vacate the order and set the case in for further proceedings as appropriate.
>
> (3) If a motion is not filed under §B(1) of this regulation, or is filed and denied, the final default order is effective.

-14-

Mr. Wilson asserted that there was good cause for his initial failure to participate because he was not properly served. Although he raises several arguments on appeal in support of the argument, he raised in his motion to vacate only the issue of whether he actually was served, and that was the basis of the ALJ's decision. Accordingly, that is the only issue properly before us. *See Campbell*, 364 Md. at 123 ("[A]n appellate court will review an adjudicatory agency decision solely on the grounds relied upon by the agency.").

A proper return of service is *prima facie* evidence of valid service of process, but the presumption of validity can be rebutted. *Pickett v. Sears, Roebuck & Co.*, 365 Md. 67, 84 (2001). Although a mere denial of service is not sufficient, *id.*, if the "denial is supported by corroborative evidence by independent, disinterested witnesses, the denial will stand unless the corroborative evidence is refuted." *Ashe v. Spears*, 263 Md. 622, 628 (1971).

Here, the private process server filed an affidavit indicating that Mr. Wilson was served, stating: "Accepted by: Corey Blandon, co-resident." Mr. Wilson submitted the affidavit of Mr. Blandon, who stated, contrary to the affidavit of the process server, that: (1) he "never received any paperwork from the process server"; and (2) he advised the process server that he "would not accept any papers" for Mr. Wilson.

The determination "[w]hether a person has been served with process is essentially a question of fact." *Harris v. Womack*, 75 Md. App. 580, 585 (1988). The ALJ in this case made a factual finding that Mr. Wilson had been served based on the affidavit of the private process server. The ALJ specifically found that the two affidavits were conflicting, stating

-15-

that Mr. Blandon's affidavit "contradicts" the affidavit of the process server. Nevertheless, without explanation, the ALJ credited the process server's statement that Mr. Blandon accepted service, despite Mr. Blandon's statement to the contrary.

The question here is whether it is proper to resolve a credibility determination based solely on conflicting affidavits.[10] We hold that it is not. Where the only evidence before the ALJ regarding service of process was two conflicting affidavits regarding whether Mr. Wilson was properly served, there was insufficient evidence to support the ALJ's decision to deny Mr. Wilson's motion to vacate the default order.

Other jurisdictions have reached a similar conclusion. In *Astudillo v. Flushing Hospital Medical Center*, 796 N.Y.S.2d 95, 97 (N.Y. App. Div. 2005), the court held that dismissal of the complaint on the ground that the defendant was not properly served with process was improper where the only evidence before the court was two conflicting affidavits. The court held that, "[i]n view of the parties' conflicting affidavits with respect to service [on the defendant], a hearing should have been held to determine whether service

_____

[10] As indicated, *supra*, although the ALJ said that there was additional evidence of service of the Complaint, the record does not support that assertion. The ALJ stated that there was evidence that Mr. Wilson was served based on the mailing of MDE's request for a default order and the default order and Mr. Wilson's response to the default order. This evidence, however, did not corroborate the process server's affidavit relating to service of the initial complaint. *See Reed v. Sweeney*, 62 Md. App. 231, 237-38 (1985) ("Because service of process raises jurisdictional issues and focuses upon the power of a court to exert its authority over a particular party, it cannot be waived or ignored simply because the defendant had actual notice of the action.").

upon [the defendant] was properly effected." *Id*. Thus, the court remanded for further proceedings to make that determination.

In *Classen v. Classen*, 893 P.2d 478, 481 (N.M. Ct. App. 1995), the New Mexico Court of Appeals held that, in a divorce proceeding, where "[t]he only matters of record regarding propriety of service" were "conflicting affidavits," the trial court "cannot resolve the factual issues that control whether service was proper." Accordingly, the court remanded the case for evidentiary proceedings on that issue. *Id.* at 482.

As this Court has stated, a default judgment "should not proceed until the court is completely satisfied that there has been proper notice of the impending proceedings served on the defaulting absentee party." *Roddy-Duncan v. Duncan*, 157 Md. App. 197, 201 (2004) (reversing denial of motion to vacate default judgment because questions relating to affidavit of service warranted a hearing). Here, the ALJ erred in resolving the factual issue whether Mr. Wilson was served based on conflicting affidavits. Accordingly, we vacate and remand for further proceedings to resolve that issue.

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO REMAND TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**